636 So.2d 818 (1994)
CLEAR CHANNEL COMMUNICATIONS, INC. (WAWS, Channel 30, Jacksonville, Florida), Petitioner,
v.
Gerald D. MURRAY, Respondent.
No. 93-3434.
District Court of Appeal of Florida, First District.
May 4, 1994.
Talbot D'Alemberte, Thomas R. Julin, C. Alan Lawson, and Edward M. Mullins, Steel, Hector and Davis, Tallahassee, for petitioner.
Brent D. Shore, Jacksonville, for respondent.
Peter Antonacci, Deputy Atty. Gen., Tallahassee, and Bernard De La Rionda, Asst. State Atty., Jacksonville, for State.
ZEHMER, Chief Judge.
This case came before the court on the emergency petition for certiorari filed by Clear Channel Communication, Inc., to review an order entered by Judge Alban E. Brooke in the criminal case of State v. Gerald D. Murray, Duval County circuit court case number 92-3708 CF, then awaiting trial before Judge Brooke. The order, entered on the morning of October 26, 1993, granted defendant Murray's motion to restrict and prevent the broadcast that evening of a segment of the television program "America's *819 Most Wanted" over Petitioner's television station, WAWS (Channel 30), in Jacksonville. We directed Murray to show cause by 5:00 p.m. that day why the petition should not be granted, and set the matter for oral argument by telephone conference call shortly thereafter. After hearing argument and considering the matters of record before us, we immediately issued an order quashing the trial court order restricting the broadcast and permitted the program to be aired that evening. This court's order also quashed the trial court's sealing of the transcript of the October 26 hearing pursuant to defendant Murray's motion. This opinion explicates the basis for our order on this petition.
Defendant Murray was awaiting trial on charges of first degree murder and sexual battery arising out of the 1990 slaying of a 59-year-old grandmother. The case apparently had extensive notoriety and, on the morning of October 26, Murray's counsel filed an emergency motion seeking a "gag" order restricting certain pretrial publicity. Specifically, the unsworn motion alleged that: Defendant's trial was set for the week of December 13, 1993; Defendant had been informed and believed that a segment of the television show "America's Most Wanted" scheduled for airing in the Jacksonville area "will contain specific details and allegations with regard to his case as well as statements from the victim's family"; and, if this segment was broadcast, "the Defendant will be significantly prejudiced, especially since the broadcast is being aired approximately six (6) weeks prior to the Defendant's scheduled trial date." The motion prayed for "entry of an Order restricting and preventing the broadcast of this segment of `America's Most Wanted' by WAWS (Channel 30) or any other media source during the pendency of the Defendant's trial." Petitioner was notified of the motion and an emergency hearing thereon, and appeared through counsel. At the hearing, defendant Murray's counsel orally moved to seal the motion and requested that the hearing be held in camera. No evidence was presented at the hearing and the motion was decided on the basis of arguments and factual representations by counsel for Murray and Petitioner.
Based on these presentations and argument, the trial court ordered that: (1) the motion to seal the emergency motion is denied; (2) the motion to hold the hearing on the motion in camera is granted; (3) the motion for emergency relief is granted in part and denied in part, in that: WAWS (Channel 30) is prohibited from broadcasting any segments of "America's Most Wanted" at the scheduled time on October 26
to the extent that such program contains non-news segments that refer to defendant Gerald D. Murray. An illustration of a non-news portion that is prohibited by this Order is interviews of the victim's family members. The defendant's motion is denied, however, with respect to the other relief sought including the request to prohibit WAWS (Channel 30) from broadcasting news portions of the "America's Most Wanted" program. WAWS (Channel 30) may broadcast those portions of the [program] at 9:00 p.m. on October 26, 1993, that contain news segments regarding defendant Gerald D. Murray.
The order also incorporated, by reference to pages 35 through 37 of the hearing transcript, certain explanations made by the judge during the hearing.[1]
*820 The petition for certiorari now before us was filed within hours after the trial court order was rendered. Petitioner contends that: (1) the order is invalid because notice of the hearing was delivered to Petitioner without service of process; (2) the order is an invalid prior restraint; (3) the order attempts to improperly control editorial discretion; (4) the order was entered without according due process to Petitioner; and (5) the order improperly allows an in camera proceeding and improperly seals the transcript of that proceeding. We directed Respondent Murray to show cause why the relief should not be granted and heard argument on the petition late in the afternoon of that same day. We granted Petitioner review by certiorari and issued an order providing that:
1. The circuit court's order sealing the transcript of the hearing of October 26, 1993, on this motion is hereby quashed.
2. Defendant Murray's motion and the matter submitted in support thereof at the hearing before the circuit court are legally insufficient to support entry of the circuit court's order restricting the broadcast of the described television program, Nebraska Press Association v. Stuart, 427 U.S. 539 (1976), and such order is hereby quashed.
Because the trial court erred in sealing the hearing transcript and because the order restricting the broadcast constitutes an invalid prior restraint in violation of Petitioner's First Amendment right to freedom of the press, we find it unnecessary to reach the remaining issues presented in the petition.
Whether the order under review violates the First Amendment guarantee of freedom of the press is determined principally by reference to the Supreme Court's decision in Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). In that case, as in this, the trial court was presented with the difficult task of taking action to preserve to a defendant charged with murder his right to a fair trial by jury as guaranteed by the Sixth Amendment, imposed on the states through the Due Process Clause of the Fourteenth Amendment, in the context of restraining extensive and sensational pretrial publicity of the case by the press. Thus, the Supreme Court was called on to reach an accommodation regarding the obvious tension between the defendant's right to jury trial and the rights of the press under the First Amendment, as we are in this case. In its opinion in the Nebraska Press case, the Court observed that cases presenting a denial of fair trial by reason of such extensive and sensational publicity "are relatively rare" and usually in those instances the trial court can take corrective measures short of imposing by court order a prior restraint on the publication of information about the defendant and the case. 427 U.S. at 553-55, 96 S.Ct. at 2800-01. Discussing the First Amendment provisions that guarantee freedom of the press, which extend to the states through the Due Process Clause of the Fourteenth Amendment, the Court reiterated that the purpose of these guarantees is "to afford special protection against orders that prohibit the publication or broadcast of particular information or commentary  orders that impose a `previous' or `prior' restraint on speech." Id. at 556, 96 S.Ct. at 2801. Pointing out that any prior restraint on expression comes to the court with a heavy presumption against its constitutional validity, and that a party seeking to obtain such an order carries a heavy burden of showing justification for the imposition of such a prior restraint, the Court observed that, "The thread running through all these cases is that prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights." Id. at 558-59, 96 S.Ct. at 2802-03. Therefore, to determine whether the danger to the defendant's right to a fair trial by jury overcomes the presumption of unconstitutionality attendant to an order imposing a prior restraint, the opinion set forth the following analysis:
To do so, we must examine the evidence before the trial judge when the order was entered to determine (a) the nature and *821 extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger. The precise terms of the restraining order are also important. We must then consider whether the record supports the entry of a prior restraint on publication, one of the most extraordinary remedies known to our jurisprudence.
Id. at 562, 96 S.Ct. at 2804. Thus, we must examine the record in this case to determine whether the proceedings and order entered by the trial court pass muster under these analytical requirements.
We find no indication in the record or the order under review that indicates the trial court undertook to perform any of the analysis required by the Nebraska Press case. As to the nature and extent of pretrial coverage, the Supreme Court stated:
The District Judge [trial judge] was required to assess the probable publicity that would be given these shocking crimes prior to the time a jury was selected and sequestered. He then had to examine the probable nature of the publicity and determine how it would affect prospective jurors.
Id. at 562, 96 S.Ct. at 2804. In the case before us, we find nothing in the record to indicate that the trial judge complied with these directives. The defendant's unsworn emergency motion contains no allegations that show the nature and extent of the pretrial publicity that would result from the broadcast of the segment of the television show on station WAWS; it merely alleges the pure conclusion that the defendant will be "significantly prejudiced" if the broadcast is permitted to be aired at the scheduled time. No evidence was presented at the hearing on the motion to show how pervasive the publicity from this airing would likely be.[2] More importantly, the trial court's order contains no findings whatsoever in this regard, further suggesting that little, if any, attention was given to this factual matter. Nor is there any indication that consideration was given to alternative measures to protect the defendant's right to jury trial short of the outright prohibition of broadcasting portions of the subject television program.[3] Finally, there has been no showing in the record and no finding by the trial court that the restraint fashioned by the court could effectively prevent the anticipated harm. The order permits much of the information characterized by the court as "news" relating to Murray's case to be televised, and the order does not prohibit the publication and dissemination throughout the Jacksonville community by others of the information the trial court characterized as "non-news" material. The attempt in the order to permit Petitioner to televise matters that constitute "news" while prohibiting publication of certain "non-news" materials not only served to improperly inject the court into the editorial process,[4] but rendered the order so vague and overbroad that it cannot withstand scrutiny under the *822 Nebraska Press Ass'n decision.[5] Accordingly, we conclude, as did the Supreme Court in that case, that:
[O]n the record now before us it is not clear that further publicity, unchecked, would so distort the views of potential jurors that 12 could not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence presented in open court. We cannot say on this record that alternatives to a prior restraint on petitioners would not have sufficiently mitigated the adverse effects of pretrial publicity so as to make prior restraint unnecessary. Nor can we conclude that the restraining order actually entered would serve its intended purpose. Reasonable minds can have few doubts about the gravity of the evil pretrial publicity can work, but the probability that it would do so here was not demonstrated with the degree of certainty our cases on prior restraint require.
427 U.S. at 569, 96 S.Ct. at 2807.
For these reasons, the provisions in the trial court order under review that restrain the broadcast of the subject television program are clearly violative of the First Amendment and must, therefore, be quashed. Similarly, there has been no showing of any sufficient reason to seal the transcript of the hearing before the trial court, and that portion of the order under review must likewise be quashed. See Nebraska Press Ass'n; Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982).
The petition for certiorari is granted and the order under review is quashed in accordance with this opinion.
JOANOS and KAHN, JJ., concur.
NOTES
[1] The transcript references read in part as follows:

THE COURT: * * * With regards [to] the motion itself, I find, first, that the program described as America's Most Wanted, based on the references made to it and the statements of counsel, and to some extent of the Court, unrebutted, indicate that it is not a program which deals specifically with news.
Secondly, I find that the defendant's Sixth Amendment rights would be harmed and that there is no method available to the Court to protect those rights in a very limited context of this television segment being proposed to air tonight.
I'll direct that Channel 30 may not publish the non-news aspects of the program, America's Most Wanted, as they apply to the defendant Gerald Murray. All of the news aspects of the program may be reported in full without restraint. I attempted to get to that question and I'm not sure that I got an answer but rather a response based on an interpretation of Nebraska Press Association, Supreme Court case. To the extent that the program, America's Most Wanted, is doing a follow-up on a previous program, which is not an issue before this Court, indicating that the defendant had escaped and the follow-up deals now with his recapture and reincarceration, that's permissible. To the extent that it delves into the totally non-news aspects at this time, that is not permissible.
[2] During oral argument on this petition, it was represented to us that WAWS is normally viewed by only 7 percent of the households in the city of Jacksonville. We take judicial notice of the fact that the population of the city as reported in the 1990 census exceeds 800,000. Hence, it is pure speculation to infer that the broadcast of this program could, much less would, significantly affect the court's ability to find a fair and impartial jury panel to try the defendant's criminal case.
[3] In Nebraska Press Ass'n, the Court stated:

There is no finding that alternative measures would not have protected Simants' rights, and the Nebraska Supreme Court did no more than imply that such measures might not be adequate. Moreover, the record is lacking in evidence to support such a finding.
427 U.S. at 565, 96 S.Ct. at 2806.
[4] The Court in Nebraska Press Ass'n observed:

"We have learned, and continue to learn, from what we view as the unhappy experiences of other nations where government has been allowed to meddle in the internal editorial affairs of newspapers. Regardless of how beneficent-sounding the purposes of controlling the press might be, we ... remain intensely skeptical about those measures that would allow government to insinuate itself into the editorial rooms of this Nation's press." Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 259, 94 S.Ct. 2831, 2840, 41 L.Ed.2d 730 (1974) (White, J., concurring).
427 U.S. at 560-61, 96 S.Ct. at 2803-04.
[5] Among other things, the trial court order in Nebraska Press Ass'n enjoined the reporting of "all `[o]ther information strongly implicative of the accused as the perpetrator of the slayings'" and the Supreme Court held with respect to this provision:

As part of a final order, entered after plenary review, this prohibition regarding "implicative" information is too vague and too broad to survive the scrutiny we have given to restraints on First Amendment rights.
Id. 427 U.S. at 568, 96 S.Ct. at 2807. (Citations omitted.)