654 So.2d 1260 (1995)
Roy Thomas BEAGLE and Sharron Whitman Beagle, Appellants,
v.
Dewey Keith BEAGLE and Melissa Darlene Beagle, Appellees.
No. 94-337.
District Court of Appeal of Florida, First District.
May 16, 1995.
Rehearing Denied June 20, 1995.
Nancy N. Nowlis and Tracy Tyson, Jacksonville, for appellants.
William J. Sheppard of Sheppard and White, P.A., and Stephen H. Donohoe of Donohoe & Kendrick, Jacksonville, for appellees.
MINER, Judge.
In this grandparent visitation case, Roy and Sharron Beagle, the paternal grandparents of a minor child, Amber Beagle, (grandparents) seek review of the trial court's order finding section 752.01(1)(e) to be facially unconstitutional because it violates the privacy rights of Dewey and Melissa Beagle, Amber's parents, (parents) guaranteed by Article I, Section 23 of the Florida Constitution. The parents also contend that their federal constitutional rights are implicated as well. Because we conclude that the statutory section in question is not facially unconstitutional under either the state or federal constitutions, we reverse and remand for a hearing to determine whether grandparent visitation is in Amber's best interest under the facts of the case.
In 1978, the Florida legislature enacted the first statutory provision related to grandparent visitation with minor grandchildren. *1261 Section 61.13(2)(b) Florida Statutes (Supp. 1978) authorized courts in dissolution proceedings to award such visitation if deemed to be in the child's best interest. However, under this section, grandparents had no standing to intervene in such proceedings to petition for visitation. During that same year, the legislature gave courts "competent to decide child custody matters" jurisdiction to award grandparent-grandchild visitation upon proper petition where one or both of the minor's parents were deceased. Again, the best interest of the minor child was the determining factor in any award of visitation. See § 68.08, Fla. Stat. (Supp. 1978).
In 1984, the legislature repealed section 68.08, Florida Statutes and enacted Chapter 752 entitled: "Grandparent Visitation Rights" which involved a more comprehensive treatment of the issue. If in the minor's best interest, grandparents could now petition for visitation in the event of death, divorce or desertion  death of either of the minor's parents, divorce of the minor's parents or desertion by either parent. Additionally, a grandparent petition for visitation was disallowed if the grandchild was placed for adoption unless the adopting person was a stepparent.
In 1990, section 6 of Ch. 90-273, Laws of Florida, added subsection (2) to section 752.01 which subsection set forth certain criteria which the court was required to consider in determining whether grandparent visitation would be in the "best interest of the minor child". Additionally, in that same year, the legislature adopted section 752.015, Florida Statutes requiring mediation in the event that families were unable to resolve differences related to grandparent visitation once a petition seeking such visitation was filed.
In Ch. 93-279, Laws of Florida, effective May 15, 1993, the legislature again amended section 752.01 to provide that upon a finding that such would be in the best interest of the minor child, the court, upon the filing of a proper petition, should grant grandparent visitation in those instances where the
minor is living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents. (Codified as section 752.01(1)(e), Florida Statutes).
It is the 1993 amendment to section 752.01 that is the subject of the instant appeal.
Amber's parents (appellees) contended below and urge on appeal that this provision, which they argue grants per se visitation rights to grandparents, violates Article I, Section 23 (the so-called right of privacy amendment) in that there is no compelling state interest in granting even temporary visitation rights to grandparents of a child in an intact, nuclear family which would justify state interference into the privacy rights of parents in the absence of proof of substantial harm which threatens the welfare of a grandchild.
For their part, Amber's paternal grandparents (appellants) note that while grandparent visitation was unknown at common law, all 50 states now have some form of legislation on the subject. Twenty-two states, including Florida, permit grandparent visitation in intact families. They argue that there exists a special bond between grandparents and grandchildren and that, in striking the statute at issue as facially unconstitutional, the trial court considered only the privacy rights of married parents, ignoring the rights of single parents, children and grandparents. They find no basis in Florida law or logic for assuming that single parents somehow do not measure up to married parents in terms of the quality of their parenting. Finally, the grandparents assert that the part of section 752.01 challenged here does nothing more than expand the rights of children in intact families and place them on a par with children in non-intact families and, further, that taken as a whole, section 752.01 gives all parents across-the-board fair treatment regarding appropriateness of grandparent visitation and invades the privacy rights of parents in the least intrusive manner.
This court has previously had occasion to consider the facial constitutionality of another *1262 portion of the contested statute. In Sketo v. Brown, 559 So.2d 381 (Fla. 1st DCA 1990), Mrs. Brown, the paternal grandmother, sought visitation with her two grandchildren, the issue of the marriage of her deceased son, Ben, and Mrs. Sketo. For whatever reason or reasons, the relationship between Mrs. Brown and Mrs. Sketo progressively deteriorated and, in time, Mrs. Brown, under section 752.01(1)(a) petitioned for visitation. The trial court granted a rather extensive visitation schedule[1] and Mrs. Sketo appealed. Among other points raised on appeal, she contended that section 752.01(1)(a) was facially unconstitutional because it violated her privacy rights under Article I, Section 23 of the Florida Constitution. In rejecting this argument, the court held:
We find nothing ... that would preclude the state from passing a statute providing for reasonable visitation by a grandparent with the grandchildren upon the finding that such visitation is in the children's best interest. The state has a sufficiently compelling interest in the welfare of children that it can provide for the continuation of relations between children and their grandparents under reasonable terms and conditions so long as that is in the children's best interest. Since that is all the challenged statute purports to do, it is not facially unconstitutional.
Procedurally, in the case at hand, pursuant to Section 752.01(1)(e), the grandparents filed a petition seeking visitation with Amber. Appellees filed a motion to dismiss the petition, which petition was subsequently dismissed upon a finding that the statutory provision under which the petition was filed unconstitutionally violated the parents right of privacy. The order of dismissal concluded:
This Court finds that when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental and natural rights of parents to raise their children as they see fit. Therefore, without a substantial danger of harm to the child, a court may not constitutionally impose its own subjective notion of the "best interests of the child" when an intact, nuclear family with fit parents is involved. Since subsection (e) of Florida Statute 752.01 does not provide for a finding of substantial danger of harm to the child in order for the state to intervene in an intact nuclear family with fit parents, this court finds subsection (e) of Florida Statutes 752.01 unconstitutional. Per se right to visitation by grandparents violates the parents' right to privacy under the Florida Constitution.
We first observe that the statutory subsection in question does not establish a per se right of visitation between grandparents and grandchildren. It only permits a grandparent to petition for visitation which may be denied should the court conclude that visitation would not be in the minor grandchild's best interest. Mandatory criteria which the trial court must consider in making this determination are included as is mandatory mediation upon the filing of a visitation petition if parents and grandparents are at odds regarding visitation. These latter features make the statutory subsection in question different than the Tennessee statute which was interpreted in Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993), and which case is cited in support of the trial court's order below.
Reduced to its essence, the parents' primary argument which was adopted by the court below is that, to comport with Article I, Section 23 of the Florida Constitution, an order granting grandchild-grandparent visitation over the objection of parents who are married to each other and living together must contain a finding that the minor child would be substantially harmed if visitation was not awarded (emphasis supplied). Presumably, the petitioning grandparents would bear the burden of proving this negative. We cannot agree. We construe the statute to require only that, before visitation can be ordered over parental objection, grandparents seeking visitation (1) must allege and *1263 establish that "either or both" parents have used their parental authority to prohibit a relationship between the child or children involved and themselves and (2) that visitation is in the best interest of the child or children. Moreover, since the parents challenge only the facial constitutional validity of Section 752.01(1)(e) in this appeal, we do not address the hypothetical case in which it is urged that this statutory subsection is unconstitutional as applied.
Having previously determined in Sketo, supra at p. 382 that section 752.01 is not facially unconstitutional in providing for grandparent visitation where death has intruded upon the family unit, it remains for us to decide whether the subsequent addition of subsection (1)(e) renders section 752.01 constitutionally infirm. The trial court sought to distinguish Sketo from the case at bar because, in Sketo the natural father was deceased and in the case at hand there was an intact family. From this allusion, we glean that the court below indulged the presumption that an intact family was deserving of more constitutional consideration and deference from the state than was a family unit visited by death. We presume that such reasoning would apply with equal force to family units rent by divorce or desertion. However, the trial court does not offer and we do not find any support for this proposition. Because appellees rely almost wholly on the trial court's order as authority for the position they take in this regard, we assume that they are equally hard pressed to find case support for their argument.
When we consider that the justification for Florida's grandparent visitation statute is the best interest of the child, it seems to us that it matters little whether the child whose interest is to be protected lives in a loving, nurturing home with both parents, a loving home headed by a working mother whose erstwhile husband has deserted the family or with a loving father devastated by a divorce not of his asking. Article I, Section 23 protects the privacy rights of each of these family units in precisely the same way. None of these loving parents is more or less equal than any other and none is entitled to more or less privacy protection than are the others. None of the children whose best interest is protected by section 752.01 is the child of a lesser parent because he or she belongs to the family unit defined by a loving father and mother or father or mother. Accordingly, we now extend the Sketo holding to grandparent visitation as contemplated by section 752.01(1)(e). However, in view of the disparate views expressed in the majority and specially concurring opinions, we certify the following question to the Florida Supreme Court as one of great public importance:
IS SECTION 752.01(1)(e), FLORIDA STATUTES (1993), FACIALLY UNCONSTITUTIONAL BECAUSE IT CONSTITUTES IMPERMISSIBLE STATE INTERFERENCE WITH PARENTAL RIGHTS PROTECTED BY EITHER ARTICLE I, SECTION 23, OF THE FLORIDA CONSTITUTION OR THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION?
REVERSED and REMANDED for further consistent proceedings.
BENTON, J., concurs.
WEBSTER, J., specially concurs with written opinion.
WEBSTER, Judge, specially concurring.
I agree with the majority that no logical and legally sustainable basis exists for distinguishing this case from our prior decision in Sketo v. Brown, 559 So.2d 381 (Fla. 1st DCA 1990). Accordingly, I find myself obliged to recognize the precedential effect of that decision, and to concur in the result reached by the majority. However, I believe that Sketo was incorrectly decided. I would recede from that opinion and hold that the statute at issue here violates both article I, section 23, of the Florida Constitution and the Fourteenth Amendment to the United States Constitution.
Sketo involved a challenge to section 752.01(1)(a), Florida Statutes (1987), which permitted a court to award grandparent visitation with a child when it was found to be *1264 "in the best interest of the minor child" to do so and "[o]ne or both parents of the child [were] deceased." Ms. Sketo, the mother, argued that, on its face and as applied to her status as a widowed single parent, the statute violated both article I, section 23, of the Florida Constitution and the Fourteenth Amendment to the United States Constitution. The court addressed only the argument that the statute was unconstitutional on its face, concluding that it was not. After listing the numerous cases (both state and federal) relied upon by Ms. Sketo in support of her argument, the court rationalized its holding as follows:
We find nothing in those cases, however, that would preclude the state from passing a statute providing for reasonable visitation by a grandparent with the grandchildren upon the finding that such visitation is in the children's best interest. The state has a sufficiently compelling interest in the welfare of children that it can provide for the continuation of relations between children and their grandparents under reasonable terms and conditions so long as that is in the children's interest. Since that is all the challenged statute purports to do, it is not facially unconstitutional.
559 So.2d at 382. While it seems to me that this begs, rather than answers, the question posed in Sketo, I am unable to say that such reasoning need not, necessarily, lead to the same result when the statute at issue here is considered. Therefore, I find myself constrained to concur. However, for the reasons which follow, I believe that Sketo was incorrectly decided, and that we should recede from it to the extent that it requires the result reached by the majority.
Article I, section 23, of the Florida Constitution mandates that, "except as otherwise provided" by that document, "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life." Our supreme court has held that this "right of privacy is a fundamental right" which "is much broader in scope than that of the Federal Constitution." Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547, 548 (Fla. 1985). It has said, further, that:
[T]he concept of privacy encompasses much more than the right to control the disclosure of information about oneself. "Privacy" has been used interchangeably with the common understanding of the notion of "liberty," and both imply a fundamental right of self-determination subject only to the state's compelling and overriding interest.
In re Guardianship of Browning, 568 So.2d 4, 9-10 (Fla. 1990). This right of privacy has been implicitly recognized as extending to decisions involving family relationships and the raising and education of children. In re T.W., 551 So.2d 1186, 1191-92 (Fla. 1989).
Even before the adoption of article I, section 23, the courts of this state had recognized the fundamental nature of the right of parents to raise their children unfettered by governmental interference, except for the most compelling of reasons. E.g., In the Interest of D.B., 385 So.2d 83, 90 (Fla. 1980) (acknowledging existence of "fundamental" "constitutionally protected interest in preserving the family unit and raising one's children"); State v. Reeves, 97 So.2d 18, 20 (Fla. 1957) (acknowledging "basic proposition that a parent has a natural God-given legal right to enjoy the custody, fellowship and companionship of his offspring"); Franklin v. White Egret Condominium, Inc., 358 So.2d 1084, 1090 (Fla. 4th DCA 1978) (acknowledging that, "[i]n our society the family unit is swathed in the protection of the Constitution, and any substantial interference directly affecting the family must be supported by a countervailing and superior interest"), aff'd, 379 So.2d 346 (Fla. 1979). Thus, in Foster v. Sharpe, 114 So.2d 373, 376 (Fla. 3d DCA 1959), the court said:
The right of the parents to the custody, care and upbringing of their children is one of the most basic rights of our civilization. The emphasis upon the importance of the home unit in which children are brought up by their natural parents is one of the great humanizations of western civilization as contrasted with the ideologies of some nations where family life is not accorded primary consideration.
*1265 See also In the Interest of E.H., 609 So.2d 1289, 1290 (Fla. 1992) (acknowledging that "constitutionally protected interest exists in preserving the family unit and in raising one's children"); Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565, 570 (Fla. 1991) (acknowledging "longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism"); In re Guardianship of D.A. McW., 429 So.2d 699, 702 (Fla. 4th DCA 1983) (acknowledging that, under Florida law, "a parent has a natural right to enjoy the custody, fellowship and companionship of his offspring"), approved, 460 So.2d 368 (Fla. 1984).
Because of their fundamental nature, before the state will be permitted to impinge upon any of the rights contained in the bundle protected by article I, section 23, it must establish "that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means." Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla. 1985). Frankly, I fail to perceive what interest it is that is sufficiently compelling to justify the state's intrusion into one of the most delicate areas of parental decision-making  with whom their child shall form and maintain relationships  whenever a judge determines that it would be "in the best interest of the minor child" to do so. It seems to me that the statute in question sends the clear message that the state knows better with whom a child should associate than do the child's parents. It seems to me, further, that such interference with the basic right of parents to raise their child as they see fit, absent a concrete threat of harm to the child's physical, emotional or mental well-being, is antithetical to the principles upon which our society was founded.
The proposition that there must be a real threat to a child's physical, emotional or mental well-being before the state may interfere with parental decision-making is not new in this state. See, e.g., Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565, 570 (Fla. 1991) ("compelling interest" justifying state interference in dependency context is protecting children "against the clear threat of abuse, neglect and death"). Given the fact that the nature of the interference is not different in kind pursuant to the statute at issue here from that involved in the dependency context, I fail to see why a lesser showing should be permitted to satisfy the requirement of a "compelling state interest" with regard to the former than is required for the latter.
Appellants concede that the statute in question "infringes upon a parent's right to privacy." However, they argue that such intrusion "is minimal," when weighed against "the children's right to know their grandparent, and the grandparent's interest in knowing their [sic] offspring." In light of the fundamental nature of the parental rights that are implicated, and of the requirement that a "compelling state interest" be offered to support such an intrusion, I find this argument unpersuasive. To argue that the interference with the parents' rights "is minimal" in such circumstances is to trivialize the importance of the parents' role in molding the character of their children. Clearly, deciding what associations a child will be permitted to have, and what relationships are to be encouraged or discouraged, is an important part of child-raising. While most would probably agree that, generally, it is beneficial for a child to have contact with his or her grandparents, I fail to see why that means that, absent evidence of a concrete threat to a child's physical, emotional or mental well-being justifying state intervention, the parents should not be the ones to make that decision. If the state can trump the parents' wishes in cases where grandparent visitation is at issue, why can it not also do so when aunts or uncles, cousins, former stepparents, or anyone claiming to have a special bond with the child, seeks similar visitation? If a "compelling state interest" sufficient to justify state interference requiring objecting parents to permit visitation between a child and grandparents can be found whenever a given court concludes that "it is in the best interest of the minor child," why would such a finding not also be sufficient to justify state interference whenever it appeared that a child's life would be improved by placement with a more attentive, loving or affluent couple?
*1266 Like the Florida courts, the United States Supreme Court has frequently recognized the fundamental nature of the right of parents to raise their children unfettered by governmental interference, except for the most compelling of reasons. Most often this right has been recognized as subsumed within the concept of "liberty" which is protected by the Due Process Clause of the Fourteenth Amendment. Thus, concluding that parents have a constitutionally protected interest in engaging a teacher to instruct their children in the German language, the Court said that the right of parents to raise their children as they see fit, without unreasonable governmental interference, is one of "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men" and, therefore, is subsumed within the concept of "liberty," as that word is used in the Fourteenth Amendment Due Process Clause. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Similarly, the Court affirmed lower court rulings enjoining enforcement of a state statute requiring that children attend public, rather than private school, concluding that the statute "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control." Pierce v. Society of Sisters, 268 U.S. 510, 534-35, 45 S.Ct. 571, 573-74, 69 L.Ed. 1070 (1925).
Perhaps the most forceful expression of the importance attributed to the right of parents to raise their children free from state interference is found in Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). There, the Court said:
It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." Kovacs v. Cooper, 336 U.S. 77, 95, 69 S.Ct. 448, 458, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring).
The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), "basic civil rights of man," Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and "[r]ights far more precious ... than property rights," May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, Meyer v. Nebraska, supra, 262 U.S. at 399, 43 S.Ct. at 626, the Equal Protection Clause of the Fourteenth Amendment, Skinner v. Oklahoma, supra, 316 U.S. at 541, 62 S.Ct. at 1113, and the Ninth Amendment, Griswold v. Connecticut, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring).
See also Roberts v. United States Jaycees, 468 U.S. 609, 618-20, 104 S.Ct. 3244, 3250-51, 82 L.Ed.2d 462 (1984) (child-raising entitled to "a substantial measure of sanctuary from unjustified interference by the State"); Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982) ("natural parents" enjoy a "fundamental liberty interest ... in the care, custody, and management of their child"); Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968) ("the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society").
When government attempts to impose intrusive regulations upon the family, the usual judicial deference accorded to legislative enactments is inappropriate. Instead, such legislation will be subjected to a strict scrutiny test. E.g., Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Under strict scrutiny review, such a statutory intrusion "may be justified only by a `compelling state interest,' ... and th[e] legislative enactment[] must be narrowly *1267 drawn to express only the legitimate state interests at stake." Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Thus, the analysis to be employed to determine the federal constitutionality of the statute in question is essentially the same as that used to determine the statute's constitutionality pursuant to article I, section 23, of the Florida Constitution. That analysis should, I submit, result in the conclusion that the statute violates the Due Process Clause of the Fourteenth Amendment, as well as article I, section 23, of the Florida Constitution.
Some years ago, in Kersey v. State, 124 So.2d 726, 730 (Fla. 1st DCA 1960), this court said:
Particularly should it be true in this age of creeping paternalism at all levels of government in this country that individuals may confidently look to the courts to fulfill their historic role of guardians of the rights and liberties of the people, one of which rights is to rear, train, care for, and enjoy the companionship of their children, without the threat of unreasonable interference of governmental authority.
It may be true that the decision to uphold the statute at issue is but the first step, and a small one at that, down the path toward the emasculation of the fundamental right of parents to raise their children as they see fit, free from governmental interference, absent evidence of a concrete threat to the physical, emotional or mental well-being of the child. However, it is a step in the opposite direction from that in which the courts of this state are traveling when called upon to decide the constitutionality of state interference with other rights contained in the bundle protected by article I, section 23. It is a step that I would not take. Instead, I would hold that, on its face, section 752.01(1)(e), Florida Statutes (1993), violates both the Florida and the United States Constitutions; affirm the trial court's order to that effect; and recede from our prior decision in Sketo v. Brown to the extent that it can be read to require a different result.
NOTES
[1] Although the court held the challenged portion of section 752.01 facially constitutional, the case was reversed upon a finding that the trial court abused its discretion in awarding overly extensive visitation.