719 So.2d 1236 (1998)
Karen Brown WILLIAMS, Monty Williams and F.H. Dicks, IV, Petitioners,
v.
Betty Lynn Brown SPEARS, Respondent.
No. 98-926.
District Court of Appeal of Florida, First District.
October 7, 1998.
Rehearing Denied November 5, 1998.
*1237 Douglas W. Abruzzo, Gainesville, for Petitioners.
Cynthia Stump Swanson, Gainesville, for Respondent.
KAHN, Judge.
Petitioners ask this court to exercise its common law certiorari jurisdiction and declare that section 752.01(1)(b), Florida Statutes (1997), is unconstitutional as applied to them. We find that on the undisputed facts of this case, the statute in question cannot be constitutionally applied. Therefore, we grant the writ.
Petitioners (hereinafter "the parents") are the divorced natural parents (Karen Brown Williams and F.H. Dicks IV) and the stepfather (Monty Williams) of a minor child. Respondent, Betty Spears, is the child's maternal grandmother. Spears filed a petition in the circuit court for Alachua County seeking court-ordered grandparent visitation pursuant to section 752.01(1)(b), Florida Statutes *1238 (1997). In their answer to the petition, the parents contended that they have a fundamental right to privacy and self determination pursuant to article I, section 23, of the Florida Constitution.[1] Specifically, they argue that because Mr. Dicks has shared parental responsibility, his rights are the same as are the rights of the custodial mother. The parents flatly oppose court-ordered visitation.
The parents moved for summary judgment on the basis that the application of the grandparent visitation statute, section 752.01(1)(b), in the circumstances of this case would violate their Florida constitutional right to privacy. The mother filed an affidavit stating that she and her divorced husband "are generally in agreement regarding the overwhelming majority of issues related to raising [the minor child]." The natural father made an identical statement in his affidavit.
The trial court denied the motion for summary judgment.[2] The parents then filed a joint motion to dismiss alleging that section 752.01(b) is unconstitutional as applied in this case and, because the statutory provision authorizing Spears' cause of action is unconstitutional, no cause of action exists over which the trial court has jurisdiction. The circuit judge denied this motion without directly addressing the constitutional argument.
The initial inquiry involves whether this court should exercise its limited common law certiorari jurisdiction. The parents argue that by refusing to rule on the constitutionality of the statute as applied to the undisputed facts of this case, the circuit court will, of necessity, conduct an inquiry that will invade the protected privacy interests of their family. They contend that by exploring questions of parental decision-making, and considering the best interests of the child, the circuit court will be engaging in precisely the type of invasion of privacy prohibited by article I, section 23 of the Florida Constitution. Accordingly, the parents argue that certiorari is appropriate because "deprivation (of the right to privacy) for even one day constitutes irreparable harm to a citizen."
"Common law certiorari is an extraordinary remedy and should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders." Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1098 (Fla. 1987). Nevertheless, a non-final order for which no appeal is provided by the Florida Rules of Appellate Procedure is reviewable by petition for certiorari in limited circumstances. To qualify for review, such a non-final order must not only depart from the essential requirements of law, it must also "cause material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal." Id. at 1099; accord Brooks v. Owens, 97 So.2d 693 (Fla.1957); Kilgore v. Bird, 149 Fla. 570, 6 So.2d 541 (Fla.1942). Here, the parents allege that their constitutional right to privacy is abridged by the very continuance of these proceedings if, in fact, that statute is unconstitutional as applied to them. We agree.
In Joseph v. State, petitioner sought certiorari review of a trial court order that prohibited petitioner from wearing at trial any clothing depicting or making reference to his religious beliefs. 642 So.2d 613 (Fla. 4th DCA 1994). The court offered the following analysis of the harm that would accrue to petitioner were he to give up his free-exercise rights during the trial:
Certiorari does lie, since the nature of the potential harm is irreparable. If wrongfully deprived of the right to wear his religious clothing in court, petitioner would suffer a harm which could not be remedied on appeal. Once the right were denied him, it would be lost forever. Petitioner *1239 would not be able to have the right adequately restored in an appeal from his conviction and sentence, if imposed.
Id. at 613-14 n. 1. Other Florida cases also suggest that certiorari is an appropriate remedy where constitutional rights are deprived or delayed during the pendency of a legal proceeding. See Clear Channel Communications, Inc. v. Murray, 636 So.2d 818 (Fla. 1st DCA 1994); Saracusa v. State, 528 So.2d 520 (Fla. 4th DCA 1988), disapproved on other grounds, Doe v. State, 634 So.2d 613 (Fla.1994).
With regard to a non-parent, visitation rights are statutory and a court has no inherent authority to award visitation. See Meeks v. Garner, 598 So.2d 261 (Fla. 1st DCA 1992). Accordingly, if the statute under which Spears seeks visitation with her granddaughter is unconstitutional as applied to the parents in this case, the court has no authority to proceed with this litigation, which would include, at the least, an inquiry into the parents' decision-making process concerning their child. Therefore, we conclude that if the statute is unconstitutional as applied, the parents will have suffered irreparable injury by going through this proceeding and having the question of constitutionality answered only on a plenary appeal or not at all, if the court does not order visitation. The damage sought to be avoided by the parents would have already been done, that being an inquiry into their private decision-making process concerning the best interests of their child.
On the merits, this case presents an issue of first impression. The challenged statute, with the relevant section italicized, reads as follows:
752.01 Action by grandparent for right of visitation; when petition shall be granted.
(1) The court shall, upon petition filed by a grandparent of a minor child, award reasonable rights of visitation to the grandparent with respect to the child when it is in the best interest of the minor child if:
(a) One or both parents of the child are deceased;
(b) The marriage of the parents of the child has been dissolved;
(c) A parent of the child has deserted the child;
(d) The minor child was born out of wedlock and not later determined to be a child born within wedlock as provided in s. 742.091; or
(e) The minor is living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents.
(emphasis added). No Florida court has ever addressed the constitutional viability of section 752.01(1)(b).[3]
The Florida Supreme Court has concluded that section 752.01(1)(e) is facially unconstitutional because it implicates the right of privacy of an "intact" family. See Beagle v. Beagle, 678 So.2d 1271 (Fla.1996). The courts are divided on the constitutionality of section 752.01(1)(a) concerning a situation where one or both parents of the child are deceased.
In Sketo v. Brown, this court upheld the prior version of section 752.01, Florida Statutes (1987). 559 So.2d 381 (Fla. 1st DCA 1990). The statute in Sketo allowed court-ordered grandparent visitation when it is in the best interests of the minor child "if, among other things, `[o]ne or both parents of the child are deceased.'" 559 So.2d at 382. Sketo upheld the facial validity of the statute without analysis, simply stating:
The state has a sufficiently compelling interest in the welfare of children that it can provide for the continuation of relations between children and their grandparents under reasonable terms and conditions so long as that is in the children's interest. Since that is all the challenged statute *1240 purports to do, it is not facially unconstitutional.
559 So.2d at 382.
When this court considered the Beagle case, Judge Webster wrote a concurring opinion expressing the view that Sketo had been incorrectly decided. See Beagle v. Beagle, 654 So.2d 1260, 1263-67 (Fla. 1st DCA 1995) (Webster, J., concurring). Judge Webster argued that, even pre-dating the adoption of article I, section 23, "the courts of this state had recognized the fundamental nature of the right of parents to raise their children unfettered by governmental interference, except for the most compelling of reasons." 654 So.2d at 1264. When the supreme court decided the Beagle case, and held the statute unconstitutional, it did not expressly overrule Sketo. Nevertheless, in evaluating the constitutionality of the statute, the supreme court stated:
The challenged paragraph does not require the State to demonstrate a harm to the child prior to the award of grandparental visitation rights. Based upon the privacy provision in the Florida Constitution, we hold that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm.
678 So.2d at 1276. This court, however, has recently taken the view that Sketo is still viable and has certified to the supreme court the question of the constitutionality of court-ordered visitation where one or both parents are deceased. See S.S. v. J.M.N., 703 So.2d 1212 (Fla. 1st DCA 1997). S.S., like the present case, arose on a petition for writ of certiorari.
In Von Eiff v. Azicri, the Third District upheld the constitutionality of court-ordered visitation in the case of a deceased parent. 699 So.2d 772 (Fla. 3d DCA 1997), review granted, No. 91,647, ___ So.2d ___, 23 Fla. L. Weekly S583 (Fla. Mar. 24, 1998). The court in Von Eiff stressed that "this case solely involves section (1)(a) of the statute where one or both of the parents are deceased." 699 So.2d at 774. The Third District distinguished Beagle because "it is manifest that the Court did not intend for the demonstrable harm requirement to extend to situations, such as the provision at issue here, which do not involve an intact family." 699 So.2d at 775.[4]
In contrast, the Fifth District found section 752.01(1)(a) unconstitutional "because we are unable to discern any difference between the fundamental rights of privacy of a natural parent in an intact family and the fundamental rights of privacy of a widowed parent." Fitts v. Poe, 699 So.2d 348, 348-49 (Fla. 5th DCA 1997). The Fourth District followed Fitts and found the statute unconstitutional in Russo v. Persico, 706 So.2d 933 (Fla. 4th DCA 1998).
Here we are concerned with the constitutionality of section 752.01(1)(b) in a factual situation where, although divorced, the parents agree on the question of visitation. Under the "intact family" analysis of Beagle, subsection (b) is not, in our view, facially unconstitutional. That is so because there are many situations in which divorced parents bitterly disagree about virtually everything involving their children, including visitation with grandparents. In these cases, it would appear that the Legislature has the prerogative to enact a statute allowing a grandparent to petition for visitation where it is in the best interest of the child. Cf. Spence v. Stewart, 705 So.2d 996, 998 (Fla. 4th DCA 1998) ("[T]here is no right of privacy to protect the decisions of one parent as to child rearing decisions absent agreement by the other parent.... Because the parents have already abandoned their right of familial privacy by bringing their dispute before the court, the court's further consideration of whether grandparental visitation is in the best interest of the child is not violative of the right to privacy."). In Spence, the Fourth District upheld court-ordered grandparent visitation within the context of a paternity action.
*1241 Our task, therefore, is to conduct an as-applied analysis of the statute. The supreme court in Beagle expressed a desire to limit its holding to the exact situation before the court, i.e., married parents living together. We note, however, that the right of privacy guaranteed by article I, section 23 of Florida's Constitution has never been narrowly construed. See, e.g., Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla.1985) ("The drafters of the amendment rejected the use of the words `unreasonable' or `unwarranted' before the phrase `governmental intrusion' in order to make the privacy right as strong as possible.").
In Beagle, the court made the following unambiguous pronouncement:
We have stated that "this Court and others have recognized a longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism." Padgett v. Department of Health and Rehabilitative Serv., 577 So.2d 565, 570 (Fla.1991). The fundamental liberty interest in parenting is protected by both the Florida and federal constitutions. In Florida, it is specifically protected by our privacy provision. Certainly the imposition, by the State, of grandparental visitation rights implicates the privacy rights of the Florida Constitution.
678 So.2d at 1275 (footnote omitted).
The parents in this case argue that, notwithstanding the Beagle court's use of the term "intact family," their privacy rights under the Florida Constitution should be protected in this proceeding. They note that the father regularly consults with the mother and stepfather about parental decisions concerning the minor child. Accordingly, they conclude that their parenting arrangement constitutes a de facto extension of the intact family unit.
It is appropriate for the court to examine the meaning of shared parental responsibility under chapter 61 of the Florida Statutes. Pursuant to section 61.046(11), Florida Statutes (1997), shared parental responsibility means "a court ordered relationship in which both parents retain full parental rights and responsibilities with respect to their child and in which both parents confer with each other so that major decisions affecting the welfare of the child will be determined jointly." The stated legislative purposes of chapter 61 include "to preserve the integrity of marriage and to safeguard meaningful family relationships" and "to promote the amicable settlement of disputes that arise between parties to a marriage." § 61.001(2), Fla. Stat. (1997). Of particular import to the intact family analysis required by Beagle is the language in section 61.046(11) providing that, in cases of shared parental responsibility, both parents retain full parental rights and responsibility with respect to their child. The section also requires that the parents confer with each other in order to insure that major decisions affecting the welfare of the child will be determined jointly.
When parents are divorced, the physical condition of a family is clearly not intact in every sense of the word. Nevertheless, where shared parental responsibility works as intended, the decision-making process of the parents is analogous to that engaged in by parents married to each other. It is beyond cavil that married parents occasionally disagree about decisions concerning the upbringing of their children. These disagreements are resolved without government intrusion, except in cases where the disagreements endanger the child's health, safety or welfare. Similarly, divorced parents operating under shared parental responsibility are essentially required by law to confer with one another and to cooperate so that major decisions affecting the child's welfare "will be determined jointly." The parents here have done exactly that. Their joint decision is entitled to deference from the government. This deference is not based upon the wisdom of the decision, but upon the fundamental, and statutory, right of the parents to make it.
We reject the contention made by Spears that this court's decision in Sketo is controlling in the present case. Sketo does not transpose to an as-applied analysis of subsection (b) of the statute because Sketo involved *1242 only a facial analysis of the situation in which one parent is dead.
The motion for summary judgment filed by parents established without contest (1) the fact of shared parental responsibility; (2) the frequent consultation between the natural parents concerning the welfare of the minor child; and (3) the parents' unity of belief that the maternal grandmother should not have visitation without the consent of the parents. The trial court's suggestion of a dispute of fact concerning harm or detriment to the minor child finds no support in the documents before us. Moreover, Ms. Spears, in her petition for grandparent visitation, did not, to her credit, allege potential harm to the minor child. Accordingly, we hold that these natural parents have demonstrated that their right to privacy within the shared parental relationship is violated by the continuation of the proceedings below. We hold that section 752.01(1)(b) is unconstitutional as applied in this case and GRANT the writ of certiorari. The statute will likewise be unconstitutional in any application to divorced parents who are in agreement that a court should not order grandparent visitation.
BARFIELD, C.J., concurs.
WEBSTER, J., dissents with written opinion.
WEBSTER, Judge, dissenting.
Because I do not believe that review by common law certiorari is appropriate in this case, I am constrained to dissent.
As the majority correctly notes, review of non-final orders by common law certiorari is appropriate "only in limited circumstances. The order must depart from the essential requirements of law and thus cause material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal." Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987) (citations omitted). Where I differ with the majority is with regard to its conclusion that petitioners have demonstrated a material injury that cannot be remedied by appeal following the entry of a final order in the trial court.
The majority concludes that petitioners have demonstrated a material injury that cannot be remedied by appeal following the entry of a final order because of the fact that they must continue to litigate the case to a final decision in the trial court. According to the majority, petitioners' right to privacy pursuant to article I, section 23, of the Florida Constitution is being violated because having to continue with the litigation in the trial court will subject "their private decision-making process concerning the best interests of their child" to judicial scrutiny. To support this conclusion, the majority relies on cases such as Joseph v. State, 642 So.2d 613 (Fla. 4th DCA 1994), involving the issue of a criminal defendant's right to wear at trial clothing reflecting his religious beliefs; and Clear Channel Communications, Inc. v. Murray, 636 So.2d 818 (Fla. 1st DCA 1994), involving the issue of the permissibility of a prior restraint on the First Amendment right of freedom of the press.
I have no quarrel with the holdings of the cases cited by the majority. In all of them, it was clear that a constitutionally protected right would be violated if the challenged orders were allowed to stand. Moreover, once the violation had occurred, there would be no way that the violation could be undone by appeal following the entry of a final order. In contrast, here it seems to me that no violation of petitioners' constitutionally protected right to privacy has yet occurred, and that none will occur unless and until the trial court enters an order compelling grandparent visitation.
As I read Beagle v. Beagle, 678 So.2d 1271 (Fla.1996), it stands for the proposition "that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." Id. at 1276. I am unable to conclude that an intrusion upon petitioners' "fundamental right to raise their child[]" has occurred simply by virtue of the fact that an action seeking grandparent visitation has been filed and may be proceeding. It seems to me that petitioners' right to decide with whom their child shall associate and form relationships remains intact until an order is entered compelling them to violate their *1243 views in that regard. Moreover, even if the trial court action does constitute an intrusion upon petitioners' right to privacy, it seems to me that, in this case, such an intrusion is at least arguably justified by the trial court's conclusion that there exists "a genuine dispute of material facts concerning the issue of harm or detriment to the minor child ... should th[e] Court deny the" petition seeking grandparent visitation.
Assuming that I am correct, it may never be necessary to decide the issue presented by petitioners. The trial court might well conclude that grandparent visitation is inappropriate, and deny the request. Even if the trial court were to conclude following a trial that grandparent visitation was appropriate and order such visitation, a complete remedy would be available to petitioners by appeal coupled with a stay of the trial court's order pending the outcome. Moreover, it seems to me that our determination regarding whether the statute is unconstitutional as applied would be considerably better informed with the aid of a record that included the evidence and testimony presented to the trial court.
Finally, I wish to point out that, although the majority correctly states that a panel of this court of which I was a member recently addressed the merits of a petition for certiorari which challenged another subsection of section 752.01 in S.S. v. J.M.N., 703 So.2d 1212 (Fla. 1st DCA 1997), the posture of that case was considerably different from that of this one. In S.S., the trial court had denied the parent's constitutional challenge based upon this court's decision in Beagle v. Beagle, 654 So.2d 1260 (Fla. 1st DCA 1995). A consent order was subsequently entered permitting some supervised grandparent visitation. Following the supreme court's reversal in Beagle, the parent renewed his challenge and sought to set aside the consent order. The trial court denied his motion, and the parent then filed his petition in this court seeking certiorari. It seems to me that, because an order had already been entered in S.S. granting temporary visitation, that case is different from this one. There, the order actually did intrude upon the parent's right, and that intrusion could not be undone by an appeal following the entry of a final order. Thus, on the facts of S.S., our decision to reach the merits was supported by cases such as Joseph and Clear Channel Communications.
The supreme court has told us "that common law certiorari is an extraordinary remedy." Martin-Johnson, 509 So.2d at 1098. I do not believe that petitioners have carried their burden of demonstrating their entitlement to that extraordinary remedy. Accordingly, respectfully, I dissent.
NOTES
[1] Article I, section 23 provides: "Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law."
[2] In the order of denial, the trial court stated, in part, "there is a genuine dispute of material facts concerning the issue of harm or detriment to the minor child ... should this court deny the petition to establish right of visitation for grandparent."
[3] The constitutional analysis in this case is limited to Florida's right of privacy, because petitioner has not adequately articulated any other constitutional theory for overturning the statute.
[4] Just recently a panel of the Third District Court of Appeal reluctantly followed Von Eiff and upheld section 752.01(1)(a). The court refused to extend Von Eiff to subsection (1)(d) of the statute and found that subsection facially unconstitutional. Ocasio v. McGlothin, 23 Fla. L. Weekly D1751, 719 So.2d 918 (Fla. 3d DCA 1998).